# United States Court of Appeals
## For the First Circuit

No. 25-1555

JASON GRANT, ALLISON TAGGART,
LISA PETERSON, and SAMANTHA LYONS,

Plaintiffs, Appellants,

v.

TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS; BEVERLY J.
CANNONE, IN THE OFFICIAL CAPACITY AS JUSTICE OF THE SUPERIOR
COURT; GEOFFREY D. NOBLE, AS SUPERINTENDENT OF THE MASSACHUSETTS
STATE POLICE; MASSACHUSETTS; MICHAEL W. MORRISSEY, IN THE
OFFICIAL CAPACITY AS THE NORFOLK COUNTY DISTRICT ATTORNEY,

Defendants, Appellees,

MICHAEL D'ENTREMONT, IN THE OFFICIAL CAPACITY AS CHIEF OF THE
POLICE DEPARTMENT OF THE TOWN OF DEDHAM,

Defendant.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Myong J. Joun, U.S. District Judge]

Before

Aframe, Thompson, and Dunlap,
Circuit Judges.

Marc J. Randazza, with whom Jay M. Wolman, Randazza Legal
Group, Mark Trammell, and Center for American Liberty were on
brief, for appellants.
Robert A. Fisher, Special Assistant Massachusetts Attorney
General and Nixon Peabody LLP, with whom Andrea Joy Campbell,
Massachusetts Attorney General, was on brief, for appellees Trial

Court of the Commonwealth of Massachusetts and Beverly J. Cannone.

John R. Hitt, Thomas E. Bocian, Emily Rothkin, Gabriel Thorton, Assistant Massachusetts Attorneys General, and Andrea Joy Campbell, Massachusetts Attorney General, on brief for appellees Geoffrey D. Noble and Michael W. Morrissey.

John G. Mateus on brief for amici curiae First Amendment Lawyers Association, Foundation for Individual Rights and Expression, and National Press Photographers Association.

———————————

July 24, 2026

———————————

**THOMPSON, <u>Circuit Judge</u>.**

<u>Black's Law Dictionary</u> (the lexicon of choice for many lawyers, jurists, and scholars) defines the term "mootness" as "[t]he lack of any actual controversy between litigants, as a result of which any judicial ruling would have no practical effect." MOOTNESS, <u>Black's Law Dictionary</u> (12th ed. 2024). The Twelfth Edition regrettably doesn't provide any examples. But were the editor looking to add one into the next edition, today's case would be a prime candidate.

Our appellants are a group of demonstrators (named in the caption) who wanted to protest outside Karen Read's second murder trial. But Massachusetts Superior Court Judge Beverly Cannone, who oversaw the trial, issued a "buffer zone" order prohibiting them (and everyone else) from doing so within 200 feet of the courthouse (as well as on some nearby sidewalks and streets).

So the demonstrators brought Judge Cannone and several others (also in the caption) to federal district court, alleging First Amendment and due process violations. Plenty of litigation ensued, and -- long story short -- the demonstrators now appeal the district court's partial denial of a preliminary injunction halting the zone (we'll fill in the details later).

Here's the problem. The Read trial ended about a year ago, and the buffer zone order instantly expired once the verdict

was read -- "not guilty" on the murder charge, by the way. And contrary to the demonstrators' contentions, we see no reason (beyond speculation) to think these demonstrators will be subject to another buffer zone mandate. So the matter's moot. *And* it doesn't fit into that slim exception to the mootness doctrine for cases that are "capable of repetition, yet evading review."

Following our normal practice for when an appeal's moot, we vacate the district court's partial denial of the motion for a preliminary injunction, with instructions to dismiss that portion of the case. Specifics follow.

I

With no doubt that Karen Read's "case has become something of a cultural phenomenon," we assume the reader's familiarity with our court's past decision about this buffer zone ordeal. See Grant v. Trial Ct. of Comm. of Mass. (Grant I), 137 F.4th 1, 2 (1st Cir. 2025).

To remind the reader where we left off, a panel of our colleagues previously vacated -- but did not reverse -- the federal district court's denial of a preliminary injunction stopping the buffer zone directive. Based on parallels the panel saw between this case, the Supreme Court's past decision in Cox v. Louisiana, 379 U.S. 559 (1965), and Massachusetts General Laws Chapter 268, § 13(A), our colleagues noted that Judge Cannone could "simplify any potential First Amendment issues" with the

- 4 -

buffer zone by amending the order to apply only "to demonstrations directed toward interfering with the administration of justice or influencing trial participants."[1]  Grant I, 137 F.4th at 6.

Judge Cannone then modified the buffer zone order to include such a mens rea requirement.  After the revision (which did leave some prior orders in place), it only prohibited "noisy protests" and the "display of written or graphic materials," to the extent either were "intended to interfere with the administration of justice or [were] intended to influence any judge, juror, witness, or court officer in the discharge of his or her duties."

But the demonstrators persisted in seeking an injunction and declaratory relief, citing continuing First Amendment and due process violations *even after* the introduction of the mens rea requirement (details about those purported violations to come shortly).  So more proceedings (the specifics of which aren't relevant here) took place in federal district court.

---

[1] Just a smidge more context: Cox upheld as constitutional a Louisiana statute making it a crime to picket or parade near a courthouse with the intent of (1) interfering with the administration of justice or (2) influencing a judge, juror, witness, or court officer.  See Cox v. Louisiana, 379 U.S. 559, 560 (1965) (describing the statute).

Meanwhile, the Massachusetts statute referenced is the Commonwealth's analogue of that Louisiana statute.  See Mass. Gen. L. Ch. 268, § 13(A).

Ultimately, the district court granted an injunction in part and denied it in part -- a distinction that will matter later in this appeal. As to the demonstrators' "facial" First Amendment challenge (i.e., a claim that there are no constitutional applications of the buffer zone), the district court first held that the Order was content-based and thus subject to "strict scrutiny."[2] And after walking through the demonstrators' various challenges, the district court determined that the order survived that stringent standard. The court also denied their renewed due process challenge.

But as to the as-applied First Amendment challenge (i.e., a claim that specific application of the buffer zone order to particular demonstrators' circumstances violates constitutional principles), the district court agreed with the demonstrators: "the record shows a persistent pattern of arrests or threats of arrest to protestors and non-protestors alike who are complying

---

[2] A "content-based" restriction is one that "targets speech based on its communicative content -- that is, if it applies to particular speech because of the topic discussed or the idea or message expressed." City of Austin v. Reagan Nat'l Advert. of Aus., LLC, 596 U.S. 61, 69 (2022) (cleaned up).

And strict scrutiny is a constitutional standard that "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Reed v. Town of Gilbert, 576 U.S. 155, 171 (2015) (cleaned up).

with the [b]uffer [z]one [o]rders."[3]  That was problematic.  So, to aid the officers in enforcing the buffer zone in a way that was constitutionally copacetic, the district court offered a list of messages that were "impermissible" (because such messages, we assume, evinced an interference with the administration of justice, at least in the district court's view).[4]  And it thought the other preliminary injunction factors were satisfied, so it ordered that law enforcement officers, before arresting anyone for protesting in the zone, "must be able to clearly articulate, without speculation, how any individual violated" the buffer zone order.

After all that, Read was acquitted on the second-degree murder charge (but found guilty of driving under the influence).

---

[3] Troubling incidents that the district court noted included (1) Massachusetts State Trooper Michael Hardman grabbing and dragging away a man named Thomas Derosier, who was "peacefully filming the courthouse's exterior from across the street," and (2) appellant Jason Grant being prohibited from standing across the street from the courthouse with an American flag and a blue sign with a biblical passage, among others, because "nothing ha[d] changed" (an officer's words) about the buffer zone after the introduction of the mens rea requirement.

[4] Among the slogans the district court considered impermissible for various reasons: "Convict Karen Read," "Convict or face consequences," "No justice, no peace -- you've been warned," "We know where you live," "The community is watching," "Do the right thing," "Remember the victim's family," "Jurors, your conscience matters," "Can't convict, no evidence," "Judge Cannone is corrupt," and "Bev's Court is a Clownshow."  Whether these were all real signs encountered outside the courthouse or just examples isn't clear.

And because the buffer zone order was only in effect "during trial," it ended as soon as Judge Cannone entered the jury's verdict.[5]  As far as we can tell, and no one argues to the contrary, demonstrations have also ceased without an ongoing trial.

Yet the demonstrators remain unsatisfied.  They think the order was facially unconstitutional as violative of their First Amendment and due process rights, so they continue to press their appeal.[6]  And that tees up our appellate task.[7]

## II

We start and end our analysis with the defendants' collective contention that the case is moot -- which is both right *and* dispositive.

### A. Mootness

It's well known that "the mootness doctrine can sometimes be difficult to get one's hands around," so we'll start

---

[5] All the parties agree (as the demonstrators put it in their appellate brief) that "the Read Trial is over and the [b]uffer [z]one [o]rder expired by its own terms," and state court records confirm the trial's end, so we take judicial notice of these facts. See In re Buscone, 61 F.4th 10, 17 n.7 (1st Cir. 2023); see also Verdict Slip, Commonwealth v. Read, No. 2282-CR-00117 (Mass. Super. Ct. Jun. 18, 2025), File Reference No. 726.

[6] To be precise, the demonstrators appealed the district court's decision "to the extent it denied Plaintiff's motion for preliminary injunction," as in the denial of the facial challenge.

[7] We thank the amici (whose names appear up near the caption) for their participation in this appeal.

with the basics.  Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021).

Our constitutional mandate as federal judges requires us to decide only live "Cases" and "Controversies."  See U.S. Const. art. III, §§ 1-2.  So we "have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013) (cleaned up). And, as then-Judge (and now-Justice) Neil Gorsuch once explained, that live-case requirement is a big part of what "distinguishes the role of the federal judge from that of the advisor or academic in our constitutional order."  Wyoming v. U.S. Dep't of Interior, 587 F.3d 1245, 1250 (10th Cir. 2009).

Mootness is one way we put the principle into practice. "If a case loses its live-controversy character at any point in the proceedings, the mootness doctrine generally stops us from pumping new life into the dispute (regardless of how fascinating the party's claims are) by ousting the federal courts of jurisdiction and requiring us to dismiss the case." Bos. Bit Labs, 11 F.4th at 8 (cleaned up).

So how do we operationalize the idea?  For starters, the "heavy burden" of establishing that a case (or an appeal) has become moot lies with "the party raising the issue," here Judge Cannone and the other defendants.  Id. (cleaned up).  And the key question is this: would the relief sought, if granted, make a

- 9 -

difference to the parties' legal interests?[8]  See id.  If the answer is no (the relief wouldn't make a difference), that means we aren't deciding a live case or controversy, so we're exceeding our constitutional mandate if we do anything other than dismiss the appeal.  See id.  And that's true *even if* circumstances change while the appeal is pending.  See CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 621 (1st Cir. 1995) ("It has been common ground throughout the last century that an appeal, although live when taken, may be rendered moot by subsequent developments." (citing Mills v. Green, 159 U.S. 651, 653 (1895))).

With that explained, we turn to the defendants' rather straightforward mootness argument.  They say that the trial's end and the immediate expiration of the buffer zone strictures have made this appeal a nullity.  Judge Cannone's orders were only in effect "during trial of [the] case," and that trial ended on June 18, 2025.  Thus, there remains no conduct to enjoin or declare illegal.

We agree.  Remember that the demonstrators sought two primary forms of relief: an injunction and a declaratory judgment.  The "claims for injunctive relief are inescapably moot because" the buffer zone order "no longer appl[ies] to [the demonstrators],"

---

[8] We distinguish the parties' legal interests from their "psyches, which might remain deeply engaged with the merits of the litigation" even when the action's over.  Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021) (cleaned up).

or anyone else.  Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 192 (1st Cir. 2022).  Again, that's because the trial ended and the buffer zone order expired on its own terms, as the demonstrators concede.  "Where, as here, challenged measures no longer adversely affect any plaintiff's primary conduct, injunctive relief is unavailable."  Id. (cleaned up).

So too for the declaratory judgment sought.  We've explained that requests for declaratory relief "can only survive a mootness challenge where the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. (cleaned up).  There's little dispute that the demonstrators' "alleged injuries are no longer immediate or real" now that the trial's over and the buffer zone's no longer in effect.[9]  Id. (cleaned up).  "These changes in circumstance have extinguished any immediate and real effect that the challenged" buffer zone "once had" on the demonstrators during the trial, so that settles that.[10]  Id.

_____

[9] Aside from, perhaps, injuries arising from subsequent prosecutions that came from the unlawful enforcement of the order.  But that's not disputed on appeal, because we think the district court's partial *grant* of a preliminary injunction already covers that.

[10] A couple loose ends: the complaint doesn't appear to assert a claim for damages, nor do the demonstrators argue it does.  So we don't need to consider -- and thus won't consider -- what effect that would have on the appeal.  But nothing here (or elsewhere in this opinion) should be read as saying that the

- 11 -

So, "to put it again in blunt terms, with the offending [judicial] order wiped away, there is nothing harming" the demonstrators "and thus nothing left for us to do that would make a difference to [their] legal interests." Bos. Bit Labs, 11 F.4th at 9 (cleaned up). Simply put, all their appellate claims are moot.

**B. The "Capable of Repetition, Yet Evading Review" Exception**

Hoping to avoid that result, the demonstrators try to invoke an exception to the mootness doctrine. The case remains alive, they say, because we can still hear cases about controversies that are "capable of repetition, yet evading review." And, for a few reasons, they argue their case is a "quintessential" example of such a controversy.

Before we get to those reasons, though, here's another quick primer on the exception. "Though often invoked, this exception operates only in extraordinary situations." Calvary Chapel of Bangor v. Mills, 52 F.4th 40, 47 (1st Cir. 2022) (citing

_____

demonstrators *can't* bring suit for past damages suffered. That's a question for another day, should the occasion arise.

And the demonstrators also don't argue that the complaint's requests for attorney's fees and costs save the case. Wisely so. See Davidson v. Howe, 749 F.3d 21, 27 n.7 (1st Cir. 2014) ("The Supreme Court has stated flatly that an 'interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990))); Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 193 (1st Cir. 2022).

Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 170 (2016)). It has two specific requirements, and if both aren't met, it doesn't apply. Kingdomware Techs., 579 U.S. at 170. First, the challenged action must be "in its duration too short to be fully litigated prior to cessation or expiration." Id. (cleaned up). And second, there must be a "reasonable expectation that the same complaining party will be subject to the same action again." Id. (cleaned up). Unlike the initial mootness analysis, the demonstrators bear the burden of showing that the exception saves their case. See Libertarian Party of N.H. v. Gardner, 638 F.3d 6, 12 (1st Cir. 2011).

Our take? The demonstrators made a sufficient showing on the first requirement, but not the second. And so they lose. E.g., Doe v. Hopkinton Pub. Schs., 19 F.4th 493, 511 (1st Cir. 2021). Here's some more:

**First, duration.** Less than three months passed between when Judge Cannone issued the buffer zone for Read's retrial (March 25, 2025) and when the jury issued the verdict (June 18, 2025), at which point the order immediately expired. We've previously held that a period of three months is "too short" to complete litigation, because "the appeal process often takes longer than a few months." United States v. Chin, 913 F.3d 251, 256-57 (1st Cir. 2019) (cleaned up). So we need not tarry on this point, where the demonstrators comfortably meet their burden.

- 13 -

**Second, repetition.** Here's where the demonstrators irredeemably falter: they don't offer us any concrete basis to think there's a "reasonable expectation that the same complaining party will be subject to the same action again." Kingdomware Techs., 579 U.S. at 170 (cleaned up). This prong requires them to show a "reasonable expectation or demonstrated probability that they will again be subjected to the alleged illegality." Harris, 43 F.4th at 195 (cleaned up). Importantly, it isn't sufficient for the demonstrators to show that the illegality's reoccurrence is "perhaps conceivable." Id. After all, "avoiding mootness, like establishing [Article III] standing, requires an 'actual or imminent' and 'concrete and particularized,' redressable injury." Id. (cleaned up). We'll walk through each of the demonstrators' arguments and explain why, based on this record, they haven't met their burden.

The demonstrators start by pointing to three other times when such buffer zone orders "were sought in Massachusetts" in relation to on-going trials. But there are two reasons why that observation doesn't move the needle. First, the demonstrators fail to distinguish between a party *seeking* a buffer zone, on the one hand, and a judge *putting one into effect*, on the other. The former, of course, does not pose a concrete harm, let alone one to these particular demonstrators -- and that matters *a lot*. See Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (explaining, in

- 14 -

the Article III standing context, how "a 'concrete' injury must be '*de facto*'; that is, it must actually exist" (cleaned up)); Harris, 43 F.4th at 195 (using standing cases in a mootness analysis).  So the more accurate asseveration for the demonstrators to claim would have been that (aside from the Karen Read saga) they've identified one other buffer zone that went into effect.  And that one involves an animal cruelty prosecution, which was also heard by Judge Cannone.

That leads right to our second point about other past buffer zones.  One buffer zone in an animal cruelty case does little to show that another buffer zone is "actual or imminent," as well as that such a buffer zone would specifically impact the Read demonstrators' "particularized" rights (and we'll have more to say about particularity next).  Id. (cleaned up); cf. City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983) ("That Lyons may have been illegally choked by the police on October 6, 1976 . . . does nothing to establish a real and immediate threat that he would again be . . . .").

The demonstrators aren't done there, though.  They next observe that Karen-Read-based litigation still abounds: she's currently the defendant in a wrongful death civil action, she's filed her own claim against her accusers, and -- if she was actually framed -- John O'Keefe's "real killer could face prosecution" (the demonstrators' words).  So, the demonstrators

- 15 -

say, "[t]rials in those actions would engender demonstrations by Appellants and a similar [b]uffer [z]one injunction may enter," a claim certainly particular to their circumstances.

But here, another problem arises: although such a scenario is "perhaps conceivable," that's not enough. Harris, 43 F.4th at 195. We don't know (1) if any of those cases *are* going to trial (an increasing rarity these days, as it is) and (2) if buffer zones *would* occur (or if they'd even *be sought*) in such cases. Given the two (if not three) big "ifs" sitting between the demonstrators and more buffer zones that might infringe on their rights, that theorizing can't help them either.[11] See id. (explaining that "avoiding mootness cannot rest on speculation about some future potential event" (cleaned up)); see also Calvary Chapel, 52 F.4th at 50 ("It is unrealistically speculative that the Governor would *again* proclaim a state of emergency and *then* reimpose restrictions similar enough to the prior restrictions to present essentially the same legal dispute as the one alleged in Calvary's complaint." (cleaned up)).

Third, the demonstrators try to align their situation with a couple cases about press access to judicial proceedings.

---

[11] The same goes for the amici's contention that the demonstrators' protests "were not limited to Karen Read's innocence or guilt, but to the conduct of the still-active judge, local law enforcement, and local government officials," which doesn't make up for the deficiencies in the demonstrators' argument that they'll be subject to another buffer zone in the future.

See Chin, 913 F.3d at 257; Globe Newspaper Co. v. Superior Ct., 457 U.S. 596, 603 (1982).  Yet neither lines up.

Start with Chin.  WBUR (a public radio station) kept its otherwise-moot case alive via the "capable of repetition, yet evading review" exception based on two key showings that we credited: (1) "that it frequently requests that the District of Massachusetts unseal jury lists as soon as possible following a verdict in order to obtain information that would enable it to report on cases in the District" and (2) "that, in a number of instances, judges in the District have waited until after sentencing to release the requested juror information."  913 F.3d at 257 (emphasis added).  But the demonstrators, in contrast, haven't made a similar showing -- after all, it seems they only are inclined to protest Read-specific trials (as well as those related to alleged corruption in Norfolk County).  And we see ample distinction between buffer zones and restrictions on the press's access to judicial proceedings, most notably the frequency of occurrence.[12]

---

[12] See, e.g., Neb. Press Ass'n v. Stuart, 427 U.S. 539, 546-47 (1976) (explaining that a dispute between the Nebraska Press Association and the State of Nebraska about the use of pretrial restrictive orders was likely to recur in future criminal trials); see also 13C Wright & Miller's Federal Practice & Procedure § 3533.8 (3d ed. 2026) ("The largest easily identifiable category of cases involve restrictions on press access to -- or reporting of -- judicial proceedings. . . . Recurrence is inevitable, at least in the general sense that judicial proceedings regularly

- 17 -

So too with <u>Globe Newspaper</u>.  There, the Supreme Court "<u>reasonably . . . assumed</u> that Globe, as the publisher of a newspaper serving the Boston metropolitan area, will someday be subjected to another order relying on § 16A's mandatory closure rule," which prohibited the public and the press from attending trials about some sexual offenses involving a minor victim.  457 U.S. at 598, 603 (emphasis added).  We see no reasonable basis to assume the same here, given the comparative dearth of buffer zone orders and the necessary chain of inferences needed to buy the demonstrators' argument.

Finally, the demonstrators invoke <u>Roe</u> v. <u>Wade</u> (yes -- *that* <u>Roe</u> v. <u>Wade</u>) to explain why we can't take too strict a view of the "capable of repetition, yet evading review" exception.  <u>See</u> 410 U.S. 113, 125 (1973) ("Pregnancy provides a classic justification for a conclusion of nonmootness."), <u>overruled on other grounds by</u> <u>Dobbs</u> v. <u>Jackson Women's Health Org.</u>, 597 U.S. 215, 302 (2022).  The demonstrators say:

> Attempting to narrow the circumstances to the particular criminal defendant, the particular geographic layout of a courthouse, and the particular areas of demonstration, among other criteria, would be like saying Ms. Roe would have needed to get pregnant under the same circumstance, by the same man, and have the same desires *vis-à-vis* that pregnancy, which is what the Supreme Court rejected.

---

engage the public interest and frequently raise concerns that prompt courts to restrict immediate full access.").

We offer three responses.

To start, we read Roe's discussion of mootness to focus primarily (if not entirely) on the first prong of the analysis (the duration of the claim).  See ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 57 (1st Cir. 2013) (citing Roe, 410 U.S. at 125, and noting that claims involving pregnancies are among the "inherently transitory claims the Supreme Court has recognized as likely to evade review" such that the first prong of the exception is satisfied (cleaned up)).  And there's no doubt we agree with the demonstrators on the first prong.

But that leads into our next point.  The second prong is separate and specific -- the demonstrators must show a "reasonable expectation that the same complaining party will be subject to the same action again."  Kingdomware Techs., 579 U.S. at 170 (cleaned up).  Roe doesn't help them there.  There was, of course, some speculation involved about whether Roe would become pregnant again, as well as if she would have sought an abortion in that subsequent pregnancy.  But the Court made a point of saying that "pregnancy often comes more than once to the same woman," so it was quite fathomable that Roe could find herself in similar circumstances again.  Roe, 410 U.S. at 125 (cleaned up).  And if she did find herself in those circumstances, she would have been bound by the Texas law criminalizing abortion, which had been in effect in some form for over 100 years by the time of her case.

Id. at 117-19. In contrast, the demonstrators' claim here involves an added layer of speculation -- thus making our review constitutionally verboten. Again, they first haven't shown that they're going to be in similar circumstances (wanting to protest a Read proceeding) again. But even if they did, there still isn't a non-speculative reason to believe that they would be subject to another buffer zone order.

Finally, as to the demonstrators' "same circumstance, by the same man, and have the same desires" point, we don't think the caselaw's necessarily that exacting. We get that buffer zones issued by a specific judge for a specific trial are a bit of a moving target, especially compared to generally applicable laws, ordinances, or executive orders. But we're not even saying that the demonstrators needed to show that the same judge will issue exactly the same order in the same trial in the future to meet the standard. We just don't see a non-speculative basis for concluding that the demonstrators are in actual or imminent danger of facing *any* judicial buffer zone again. See Harris, 43 F.4th at 195 (explaining that "avoiding mootness cannot rest on speculation about some future potential event" (cleaned up)). So the exception does not save the case.

There is, however, one consolation worth noting: even during the rapid-fire events of the second Read trial, the federal district court and the First Circuit panel managed to produce three

decisions, and two were at least partially favorable to the demonstrators. So this isn't an ordeal where the demonstrators were wholly denied review -- they had their day(s) in court and, indeed, prevailed in part. But, as we've made clear by now, given the circumstances, the Constitution requires us to stop here.

## C. Disposition

One lingering question: now that we've determined the appeal is moot and no exception applies, what do we do with the district court's decision?[13]

Well, "as a general rule, federal courts of appeals vacate the judgment below when a civil case becomes moot during the pendency of an appeal." Diffenderfer v. Gomez-Colon, 587 F.3d 445, 451 (1st Cir. 2009) (cleaned up). This is an appellant-friendly practice rooted in equity: vacatur "clears the path for future relitigation by eliminating a judgment the loser [below] was stopped from opposing on direct review." Arizonans for Off. Eng. v. Arizona, 520 U.S. 43, 71 (1997); see also Azar v. Garza, 584 U.S. 726, 729 (2018). Vacatur is especially apt when "mootness occurs through happenstance -- circumstances not attributable to the parties -- or . . . the unilateral action of the party who prevailed in the lower court." Arizona, 520 U.S. at 71-72 (cleaned up). But importantly (and perhaps naturally, given

---

[13] No side really briefed this issue (aside from the defendants generally asking for dismissal), but they probably should have.

the practice's equity roots), the decision to vacate turns on "the conditions and circumstances of the particular case." Azar, 584 U.S. at 729 (cleaned up).

This case admittedly involves some odd circumstances, with the cause of mootness being something between happenstance and the actions of the party who won below. The jury's verdict is what made the buffer zone mandate expire, but that's only because Judge Cannone crafted the order in that fashion. Either way, such circumstances favor vacatur. See Arizona, 520 U.S. at 71-72. That result preserves the rights of all the parties, and none are prejudiced by a decision that was, after all, only preliminary. See ACLU of Mass., 705 F.3d at 58.

But then the question becomes: what are we vacating? Recall that the district court denied the preliminary injunction in part (re: the facial constitutional challenges) but granted it in part (re: as-applied unconstitutional enforcement by the local police). The demonstrators naturally only appealed the portion of the judgment below that was unfavorable to them, the partial denial of the preliminary injunction. But the defendants didn't cross-appeal the part of the judgment below unfavorable to them, the partial grant of the preliminary injunction (though we don't see why they couldn't have).

So we'll vacate only the part of the decision below properly before us, the partial denial. See, e.g., Donovan v.

Vance, 70 F.4th 1167, 1173 (9th Cir. 2023) (explaining that "partial vacatur of a lower opinion" on mootness grounds "can be appropriate" (cleaned up)); Camreta v. Greene, 563 U.S. 692, 698 (2011) (after finding an appeal moot, vacating only "the part of the Ninth Circuit's opinion that decided the Fourth Amendment issue"). After all, the partial grant is simply different -- the police officers' unconstitutional enforcement of the buffer zone raises distinct issues that aren't on appeal (and aren't before us because of the defendants' litigation decisions). So "the opinion of the district court" on such topics "will not be ripped from Federal Supplement [3]d," and "it will still be available and will still be citable for its persuasive weight" (which, as a district court opinion, is of course the only weight that it gets, beyond binding the parties).[14] NASD Disp. Resol., Inc. v. Jud. Council of Cal., 488 F.3d 1065, 1069 (9th Cir. 2007) (cleaned up). And that's all we have to say about that.

### III

To sum up: the appeal is moot, so we **vacate** the district court's partial denial of the demonstrators' motion for a

---

[14] Accordingly, our decision to dismiss the appeal of the partial *denial* as moot should not be read to decide any issues or any lingering questions related to the partial *grant* of a preliminary injunction, which (as we understand it) might remain live below.

preliminary injunction.[15]  We instruct the district court to dismiss that portion of the case.  (The remainder of the case, we leave to the district court's resolution.)  Parties shall bear their own costs.

---

[15] As in other mootness cases, it goes without saying, but we'll say it anyway: nothing in this decision prevents these demonstrators from seeking injunctive or declaratory relief if Judge Cannone or the other defendants set up another buffer zone objectionable to them.  See Bos. Bit Labs, 11 F.4th at 12 n.6.